# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# SOUTHERN DIVISION

UNITED STATES OF AMERICA

VERSUS                    CRIMINAL ACTION NO. 1:09cr38HSO-JMR

RONNIE LEE OWEN

## ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS

BEFORE THE COURT is Defendant's Motion to Suppress filed May 12, 2009 [15-1], in the above captioned cause. The Government tendered a timely Response on May 22, 2009, and Defendant filed a Reply that same day. The Court conducted a hearing on June 23, 2009, wherein it heard and considered additional testimony and evidence. With leave of Court, the parties have since submitted supplemental briefing on the issues presented. After due consideration of the evidence of record, the briefs of the parties, and the applicable law, and being otherwise fully advised in the premises, the Court finds that Defendant's Motion should be denied.

## I. FACTUAL BACKGROUND

On March 10, 2009, Biloxi Police Officer Douglass DeGeorge ["DeGeorge"] observed a red 2000 Volkswagen Jetta, driven by Defendant Ronnie Lee Owen ["Defendant"], traveling Eastbound on Interstate I-10, in Biloxi, Mississippi. Defendant's car displayed a paper tag from Delaware. The vehicle swerved out of the middle lane and into the left lane. In response, DeGeorge turned on his lights on or around mile marker 41 in order to conduct a traffic stop of Defendant's vehicle. Defendant did not pull over, but instead continued driving for 2-2 ½ more

miles. DeGeorge then activated his horn and sirens. Defendant pulled his vehicle over on the exit ramp at mile marker 44. Claudia Alonzo was a passenger in the front seat of Defendant's vehicle.

When Officer DeGeorge questioned Defendant as to his reason for not stopping immediately, Defendant responded that passenger Alonzo was in need of immediate medical attention due to high blood sugar. When asked for his driver's license, Defendant instead produced a Tennessee identification card bearing the name Ronnie Alonzo. Because the identification card number was not legible, Defendant verbally repeated it to DeGeorge who, in turn, relayed the number to dispatch. Dispatch advised DeGeorge that Defendant was wanted in eight [8] states on various fraud and forgery charges, including check fraud, and that at least one of the states was willing to extradite Defendant on the pending charges. Defendant was subsequently arrested, taken into custody, and placed in another officer's patrol car. DeGeorge retrieved Defendant's wallet, and upon examining its contents, discovered additional false identification cards and aliases.

During this time, other officers arrived at the scene. DeGeorge informed them that Defendant had been arrested and the vehicle would be towed. Emergency medical personnel, whom DeGeorge had summoned, arrived, examined, and medically cleared passenger Alonzo.

In addition to false identification cards from Tennessee and Indiana contained in Defendant's wallet, Officer DeGeorge found numerous false business and personal checks in the passenger compartment of the car. Other

officers on the scene began removing items from the trunk and placing them behind the car on the exit ramp. The items in the trunk included a computer, printer, blank check papers, ink cartridges, and additional identification cards.

Defendant was transported to the Biloxi Police Department while Alonzo drove the Jetta to the Department.[1] Shortly after Defendant arrived at the station, it was discovered that he had purchased the Jetta in Idaho using a counterfeit check under the alias Ronald Odum. The car was then impounded and its contents were inventoried. The towed vehicle report, admitted as Exhibit G-4 at the hearing, reflects that Defendant's vehicle arrived at Biloxi Police Department at approximately 12:36 p.m.

Later that afternoon, at approximately 2:35 p.m., Sergeant Donnie Dobbs advised Defendant of his *Miranda* rights, obtained written and verbal waivers, and proceeded to interview Defendant. *See* Exs. G-5, G-6. Defendant claimed he had information concerning threats against the President of the United States. In response, Martha Jahnke, U.S. Secret Service Agent, arrived at the police department and attended Sergeant Dobbs' interview of Defendant. That same evening, at 6:05 p.m., Agent Jahnke conducted a follow-up interview, *see* Ex. G-7, and again advised Defendant orally and in writing of his *Miranda* rights. Defendant executed another written waiver and then prepared and signed a written statement, *see* Ex. G-7, in which he admitted that since November 2008, he had

---

[1] DeGeorge's superior officer made the decision to allow Alonzo, who had a small dog with her, to drive the car to the station.

been using a computer software program to create counterfeit checks.

During the Court's hearing on Defendant's Motion, DeGeorge testified regarding certain aspects of Biloxi Police Department Policy:

> Q: ... inventory of a motor vehicle should be conducted when?
> A: When the owner is present. However, if it is not available, the officer will conduct an independent inventory **on the scene**.
> Q: Is it before or after the car is towed?
> A: It is **before**.
> Q: [c]oncerning the search of the passenger compartment of the vehicle. What is your understanding of when that can be done?
> A: ...our policies state that anytime we have made a custodial arrest, we can do a warrantless search of the passenger compartments of a motor vehicle, to include anything, unlocked glove boxes, unlocked luggage, clothing, or anything else that is in the vehicle.

Suppression Hearing Tr. at pp. 7-8 [emphasis added]; *see also* Ex. G-3, copy of Biloxi Police Department Policy.

> Q: So it was your intention to tow the vehicle, which meant, according to Biloxi Police Department policy, that the vehicle needed to be inventoried before it was towed, right?
> A: That is correct.

Hearing Tr. at p. 26.

> Q: So the driver's side of the vehicle and the passenger's compartment, you are conducting a search incident to arrest, correct?
> A: I am, yes, sir.
> Q: And then Officer Ramon is doing an inventory search if the trunk?
> A: Yes, sir.

*Id.* at p. 57.

Defendant was arrested on a criminal complaint filed in this district on March 11, 2009, charging him with a violation of 18 U.S.C. §513, namely, making, uttering and possessing counterfeit securities (bank checks) of an organization, and with a violation of 18 U.S.C. §1028(a)(1), namely, knowingly producing false identification

documents. On April 8, 2009, a grand jury returned a two count indictment against him for those same violations.

## II. DISCUSSION

Defendant moves this Court to suppress all evidence and statements derived from the search of his vehicle. He contends that the evidence was unlawfully seized in violation of the recent United States Supreme Court decision in *Arizona v. Gant,* 129 S.Ct. 1710, handed down on April 21, 2009. Defendant also claims that the inventory search was unconstitutional. He maintains that four officers searched the vehicle at different points in time, all of whom performed a "general rummage of the vehicle and the contents of the trunk," and that this conduct was "inconsistent with protecting the Defendant's property." Def.'s Supp. Br. at p. 12.

A.   Search Incident to Arrest

Defendant contends that the exception to the warrant requirement known as search incident to arrest is not applicable to this case, since Defendant was already under arrest, and had no access to his vehicle at the time of the search. Defendant insists that the officers present on the scene did not have a "reasonable basis to believe they would find evidence supporting the basis for arrest – driving with a suspended license." *See* Def.'s Supp. Br. at p. 10.

The Government argues that officers were acting in accordance with *New York v. Belton,* 453 U.S. 454 (1981), which was governing law at the time Defendant was arrested. In *Arizona v. Gant,* 129 S.Ct. 1710 (April 21, 2009), the United States

Supreme Court reiterated the basic rule that:

> searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment-subject only to a few specifically established and well-delineated exceptions." *Katz v. United States,* 389 U.S. 347, 357(1967)(footnote omitted). Among the exceptions to the warrant requirement is a search incident to a lawful arrest. *See Weeks v. United States,* 232 U.S. 383, 392 (1914). The exception derives from interests in officer safety **and evidence preservation that are typically implicated in arrest situations**. *See United States v. Robinson,* 414 U.S. 218, 230-234, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973). [emphasis supplied].

*Arizona v. Gant,* 129 S.Ct. at 1716.

The Supreme Court reasoned that:

> circumstances unique to the vehicle context justify a search incident to a lawful arrest when it is "reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle." *Thornton,* 541 U.S., at 632, 124 S.Ct. 2127 [citations omitted]. In many cases, as when a recent occupant is arrested for a traffic violation, there will be a reasonable basis to believe the vehicle contains relevant evidence. [citations omitted] But in others, including *Belton* and *Thornton*, the offense of arrest will supply a basis for searching the passenger compartment of an arrestee's vehicle and any containers therein.

*Id.* at 1719.

In sum, the Supreme Court in *Gant* concluded that:

> police may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search **or** it is reasonable to believe the vehicle contains evidence of the offense of arrest. When these justifications are absent, a search of an arrestee's vehicle will be unreasonable **unless** police obtain a warrant **or** show that another exception to the warrant requirement applies. [emphasis supplied].

*Id.* at 1723-24.

Thus, a search incident to arrest is proper if it is reasonable to believe the vehicle contains evidence of the offense of arrest. If not, the search can still be reasonable if the police obtain a warrant or another exception applies.

Based on the totality of the evidence and the facts surrounding Defendant's arrest in the present case, the arresting officer, after learning Defendant was a fugitive in eight [8] different states on the basis of fraud, had reasonable grounds to suspect that the vehicle contained evidence of the offense of the arrest within the meaning of *Gant*. Officer DeGeorge's Offense Report, submitted as Exhibit "A" to Defendant's Motion, states that the offense type was "fugitive from justice/NCIC" and that he was a fugitive for "Fraud and Abuse". The evidence is clear that, at the time of Defendant's arrest, and even prior thereto, Officer DeGeorge was well aware that Defendant had a number of outstanding warrants from different states for these type of charges. The arresting officer also understood that, at the time of Defendant's arrest, the state of the law permitted a police officer to search the passenger compartment of a car incident to arrest. Suppression Hearing Tr. at p. 77; *see United States v. Finley,* 477 F.3d 250, 260 (5th Cir. 2007)*; United States v. Phillips,* 261 F. App'x 740, 741 (5th Cir. 2008).

Based on the foregoing, this case is factually distinguishable from *Gant,* and the search of the passenger compartment incident to arrest was proper under the circumstances.

B. <u>Inventory Search</u>

The Court further finds that the entire search of Defendant's car was conducted

-7-

pursuant to another valid exception to the warrant requirement, namely a lawful inventory search. "An inventory search is valid, provided it is conducted under an established police department inventory policy." *United States v. Walker,* 931 F.2d 1066, 1069 (5th Cir. 1991).

An inventory search is a routine administrative procedure designed to effect three distinct purposes: protection of the owner's property which may be stored in the vehicle; protection of the police against claims of lost, stolen or vandalized property; and protection of the police from potential danger. *See South Dakota v. Opperman,* 428 U.S. 364 (1975). When the police acquire temporary custody of a vehicle, a warrantless search of the vehicle does not offend Fourth Amendment principles so long as the search is made pursuant to 'standard police procedures' and for the purpose of 'protecting the car and its contents'. *Id.* at 372-73; *see also United States v. Seals,* 987 F.2d 1102, 1107 (5th Cir. 1993). In the present case, Officer DeGeorge testified that the trunk of the vehicle was searched as part of an inventory conducted prior to Defendant's vehicle being towed, and consistent with the Department's existing written policy. *See* Ex. G-3 at pp.2-4. Although Defendant's vehicle was ultimately not towed, Ms. Alonzo was not simply free to depart the scene. She was instructed to drive the vehicle to the police station, where it was impounded. Had the search incident to arrest never occurred, the inventory search would have uncovered the evidence.

Thus, even if the search incident to arrest was conducted contrary to legal principles or policy, the Court further finds that items both in the passenger

compartment and in the trunk would have been legitimately discovered pursuant to normal police practices under the "inevitable discovery" doctrine. Once Defendant's vehicle had reached the station and been impounded, all of the items at issue would have been discovered during the subsequent inventory reflected on Exhibit "G-4".

Based on the record contained in the Court file, the evidence adduced at the hearing, and the relevant law, the Court finds that the evidence in question would have been discovered during or through the inventory of the car that was later conducted at the station. The inventory of Defendant's vehicle, whether it occurred on the exit ramp or once the vehicle arrived at the police station, would have occurred regardless of any search incident to arrest. The Court finds that the Government has also carried its burden under the inevitable discovery doctrine. *See United States v. Zavala*, 541 F.3d 562, 579 (5th Cir. 2008)("inevitable discovery test in this circuit is more favorable to Government than test in other circuits").

C.  Consent to Search

The voluntariness of consent depends upon the totality of the circumstances surrounding the search. *United States v. Mendez*, 431 F. 3d 420, 429 (5th Cir. 2005). The Government has the burden of proving, by a preponderance of the evidence, that consent was voluntary. *United States v. Yeagin,* 927 F.2d 798, 800 (5th Cir. 1991). When evaluating the voluntariness of consent, the Court considers six factors, no one of which is dispositive. They include: (1) the voluntariness of the defendant's custodial status; (2) the presence of coercive police procedures; (3) the extent and level of the

defendant's cooperation; (4) the defendant's awareness of his right to refuse consent; (5) the defendant's education and intelligence; and (6) the defendant's belief that no incriminating evidence will be found. *United States v. Mendez*, 431 F. 3d at 429; *see also United States v. Dortch,* 199 F.3d 193, 201 (5th Cir. 1999); *United States v. Zucco,* 71 F.3d 188, 191 (5th Cir. 1995).

The Court has reviewed the testimony of DeGeorge together with the video tape of the stop and resulting arrest, including Defendant's and Claudia Alonzo's statements at the scene. After considering the totality of the circumstances, both Defendant and passenger Claudia Alonzo gave the officers valid consent to search the vehicle at the site of the stop. The evidence was properly discovered for this reason as well.

D.  Defendant's Confession

Because the Court finds that the evidence at issue was lawfully obtained, Defendant's statements or confession are likewise not subject to suppression. Even if the evidence retrieved from the car were subject to suppression, the Court finds that Defendant's subsequent statements were sufficiently attenuated to preclude suppression. *See generally Segura v. United States*, 468 U.S. 796, 805 (1984); *United States v. Johnson,* 95 F.3d 1149, 1152 (5th Cir. 1996). The evidence demonstrates that prior to making his statements, Defendant was advised of his rights at the station at least twice, once some two hours after his arrest, and again another four hours later. Both times he acknowledged, both verbally and in writing, his understanding of those rights and consented to make statements to two different officers. At the conclusion

of the second interview, Defendant voluntarily completed and signed a written statement. *See* Ex. G-9. These statements were sufficiently attenuated, temporally, spatially, and otherwise, from the initial search as to be independently admissible.

### III. CONCLUSION

In accordance with the foregoing,

**IT IS, ORDERED AND ADJUDGED** that, Defendant's Motion to Suppress Evidence filed May 12, 2009 [15-1], should be, and is hereby **DENIED.**

**SO ORDERED AND ADJUDGED**, this the 28th day of August, 2009.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE